IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMARION DAWON JACKSON,<br><br>Defendant. | Case No. 1:26-mj-06 |

**AFFIDAVIT IN SUPPORT OF A
CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Charles Vancampen, Task Force Officer ("TFO") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being first duly sworn, hereby depose and state as follows:

**Introduction and Agent Background**

1.      Your Affiant is a sworn law enforcement officer and has been employed with the Virginia State Police ("VSP") since April 2015.  Your Affiant is currently assigned to the VSP Bureau of Criminal Investigations ("BCI"), Division Seven, Drug Enforcement Section.  In this capacity your Affiant's duties include investigating violations of law relating to the illegal distribution of controlled substances.  Additionally, your Affiant is deputized as a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives, Washington Field Division.  In this capacity, your Affiant's duties include investigating violations of law regarding firearms.

2.      Prior to April 2019, your Affiant was a uniformed VSP Trooper assigned to Prince William and Fairfax Counties.  Your Affiant graduated from the VSP Academy.  Your Affiant has received additional training from the State Police as well as local and federal agencies in topics to

include investigations, interviewing, narcotics manufacturing and distribution, firearms laws, search and seizure, surveillance, and machinegun conversion devices ("MCDs").  Your Affiant has participated in numerous criminal investigations resulting in the arrest of individuals and the seizure of illegal narcotics and firearms.

3.      The facts and information contained in this Affidavit are based upon my training and experience, participation in investigations, personal knowledge, and observations during the course of this investigation, as well as the observations, training, and experience of other agents and law enforcement officers involved in this investigation.  All observations not personally made by me were relayed to me by the individuals who made them or are based on my review of records, documents, videos, and other evidence obtained during the course of this investigation.

4.      Because this Affidavit is being submitted for the limited purpose of obtaining a Complaint and Arrest Warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause for the issuance of the Complaint and Arrest Warrant.

5.      I make this Affidavit in support of an application for a Criminal Complaint and Arrest Warrant for Jamarion Dawon Jackson ("JACKSON").  For the reasons set forth below, I submit that there is probable cause to believe that JACKSON has committed a violation of 18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year).

**Probable Cause**

6.      This case relates to JACKSON's possession of a Glock 19 handgun affixed with a Machinegun Conversion Device on Interstate 95 in Fairfax County, Virginia on or about April 17, 2025.

2

7.  Interstate 95 in Fairfax, Virginia is a roadway located within the Eastern District of Virginia.

8.  On or about April 17, 2025, VSP Trooper Taylor Brown was on patrol in heavy traffic on southbound Interstate 95 around the Pohick Road overpass, which is in Fairfax County, Virginia.  A blue Genesis G70 sedan, bearing VA license plate TDP-3856, passed Trooper Brown on the right shoulder at a high rate of speed.  Trooper Brown activated his emergency equipment and attempted to catch up to the vehicle.  The Genesis sedan then crashed into a parked vehicle on the right shoulder and struck two additional vehicles on the roadway.

9.  Trooper Brown observed the driver and only occupant, later identified as JACKSON, exit the vehicle and run south on Interstate 95.  Trooper Brown initiated a foot pursuit and observed JACKSON attempt to enter three vehicles all while Trooper Brown gave him verbal commands to stop.

10.  JACKSON failed to enter the first two vehicles, but when he reached the third vehicle that had its passenger side window rolled down, JACKSON attempted to jump into the vehicle.  Upon realizing that JACKSON was attempting to enter the vehicle, the driver of the third vehicle accelerated causing JACKSON to fall and ultimately be struck by the vehicle.  Law enforcement then took JACKSON, who had sustained numerous medical injuries from the incident, into custody.

11.  After JACKSON was transported for medical treatment, Trooper Brown returned to JACKSON's Genesis sedan to conduct a vehicle inventory.  Upon opening the driver's door, Trooper Brown observed a Glock, model 19, 9mm caliber, semi-automatic pistol, bearing Serial Number ("SN"): BUPT522, in plain view on the driver's side floorboard.  The Glock pistol was affixed with a Machinegun Conversion Device and a 31-round magazine.  A mobile phone was

3

located beside the firearm.  Packaging material routinely used to distribute narcotics was found in the backseat of the vehicle.  Law enforcement also located two empty bottles labeled "promethazine," neither of which bore JACKSON's name, in the trunk of the vehicle.

12.     While undergoing medical treatment at Lorton Healthplex and in the presence of a VSP Trooper, a nurse asked JACKSON what his occupation was, to which JACKSON replied that he sold drugs.

13.     Law enforcement observed a Virginia Motor Vehicle Registration from inside the vehicle showing that the 2023 blue Genesis G70 sedan displaying Virginia plate TDP-3856 was registered to Jamarion Dawon JACKSON in Alexandria, Virginia.

14.     On May 16, 2025, a search warrant, 25sw439, for the cell phone found in JACKSON's vehicle was issued by the Honorable Judge William B. Porter.

15.     During a review of the mobile phone extraction, your Affiant observed multiple pictures of JACKSON in the presence of and possessing firearms.  Specifically, your Affiant observed a number of images and videos, with a creation date of March 20, 2025 based on the metadata, where JACKSON is pictured standing with another individual.  In these images and videos, JACKSON can be seen with a firearm with an extended magazine and a blue band in his waistband and then places it on the floor.  This extended magazine is tan in color which is consistent with the color of the extended magazine recovered during JACKSON's arrest. JACKSON has distinctive tattoos on the side of his right hand and right wrist.

**Photographs from JACKSON's phone showing tattoos on his right hand and wrist**





16.     Your Affiant also observed multiple text conversations on the mobile phone extraction related to firearms. In a text conversation on March 12, 2025 with another person ("Individual 1"), approximately a month before JACKSON's arrest in the instant case, JACKSON sent a video of a person handling a pistol. Although the person's face is not visible, it appears to be JACKSON based on distinctive tattoos on the person's hand and wrist. The tattoos in the video

5

are consistent with JACKSON's hand and wrist tattoos your Affiant observed during the review of the mobile phone.  Markings on the pistol can be clearly seen as a Glock logo, "19 Gen 5," "Austria," and "9x19."    These markings are consistent with the pistol seized during JACKSON's arrest.

**Still of video from JACKSON's phone showing JACKSON's hand and wrist tattoos and a Glock 19 pistol**



17.    Further, the pistol in the video also has a weapon-mounted light attached to it. During the video, the text "Solofish" and "SL-1108" is visible on the weapon-mounted light.  This text is consistent with text that appears on the weapon-mounted light attached to the seized firearm. Further, the person in the video manipulates the firearm and inserts a tan or brown extended magazine similar to the 31-round magazine seized during JACKSON's arrest.

18.    After sending the video of the gun to Individual 1 on March 12, 2025, JACKSON received a reply from Individual 1 with a video of a person handling a tan Glock pistol with a MCD affixed to it.  Later in the conversation on March 12, 2025, Individual 1 sent JACKSON two photos of a tan Glock pistol with an attached metallic gold MCD.  After sending the photos of the MCD, the next three text messages from Individual 1 state: "Dis joan kurkin gold," "Wit da brown

6

30," and "Nd he said he will do 250 for em." JACKSON replied: "200 I'll get." Individual 1 then replied, "Ion think he goin to" to which JACKSON replied, "I'm good bout get whip toma."

19.     In a separate text exchange with another individual ("Individual 2") on February 22, 2025, approximately two months before JACKSON's arrest in the instant case, JACKSON was asked "Yu wann dis 19?" JACKSON replied, "I got a 19." JACKSON then received an icon which your Affiant observed to be a form of light switch/dimmer and replied, "Yeah I need dat." Individual 2 asked JACKSON, "Watchu got." JACKSON replied, "175." Individual 2 texted JACKSON, "Ima need ur backplate." Based on training and experience, your Affiant is aware that a Glock 19 may sometimes be referred to as a "19" and another term for an MCD is a "switch."

20.     During a text conversation with a third person ("Individual 3") on December 13, 2024, JACKSON texted, "Hm u want for that 19." Individual 3 replied to JACKSON, "8" and "I'll take 750." JACKSON and Individual 3 exchanged additional messages and on December 29, 2024, JACKSON asked, "You still got that 19." Individual 3 replied, "Yea." JACKSON responded, "I might grab by end of next week." They exchanged further messages and several weeks later on February 18, 2025, Individual 3 asked "So you not gon buy it?" JACKSON replies, "Yeah I am." This date was approximately two months before JACKSON's arrest in the instant case.

21.     During a text conversation with a fourth person ("Individual 4") on February 18, 2025, JACKSON texted, "Just got 19."

22.     Your Affiant observed another video on the phone of the lower half of an individual's face, and a Glock pistol with an attached weapon-mounted light, shining that light on a necklace. In the video, the serial number, BUPT522, on the slide and barrel of the pistol are visible. This serial number matches the serial number displayed on the slide and barrel of firearm

7

seized during JACKSON's arrest.  The weapon-mounted light also appears to be consistent with the one attached to the seized firearm, with the letters "SL-1108" on the side.  Additionally, the tattoo on the individual's left arm is visible.  This tattoo is consistent with tattoos your Affiant observed in photographs showing JACKSON's full face and arms during the review of the phone.  Based on the metadata of this file the video was created on March 17, 2025, approximately a month before JACKSON's arrest in the instant case.

**Photographs of seized Glock 19 pistol**





**Still from video from JACKSON's Phone**



**Photograph from JACKSON's Phone**



23.     Your Affiant has reviewed JACKSON's criminal history and JACKSON is a prohibited person.  On November 10, 2022, JACKSON was convicted in Prince William County Circuit Court of Virginia Code § 18.2-279 ("Weapons: Building Discharge Firearm, Missile in/at Occupied Building, Unlawfully") and Virginia Code § 18.2-137 ("Destruction of Property").  Both of these offenses are felonies punishable by sentences of imprisonment for more than one year. Your Affiant has also reviewed a Sentencing Order dated November 10, 2022, Case Nos. CR22002133-00 and CR22002134-00, which indicates the defendant was found guilty of the two felony charges listed above.

24.     Your affiant is aware that it is unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to possess a firearm or ammunition under 18 U.S.C. § 922(g)(1).

25.     Your Affiant has reviewed a trace report for the Glock 19 pistol which indicates the country of origin as Austria and lists the importer as Glock Inc., Smyrna, Georgia and therefore these items traveled in interstate commerce to reach the Eastern District of Virginia.  Additionally, ATF firearm tracing records show that the Glock pistol was originally purchased in October 2021 in Texas, outside of Virginia, further demonstrating that the firearm traveled in interstate commerce.

26.     Law Enforcement submitted the seized firearm for fingerprint analysis to the Virginia Department of Forensic Science.  Your Affiant has received an initial verbal statement that no fingerprints were available for analysis from the seized firearm, however, your Affiant has not viewed the final written report.

27.     Your affiant is aware that a Machinegun Conversion Device alters a semi-automatic firearm to be able to fire fully automatic, meaning that multiple rounds can be fired by a single

10

trigger pull.  Based on my training and experience the device attached to the rear of the Glock pistol recovered from JACKSON's vehicle is consistent with an MCD that would convert the Glock pistol to a machinegun capable of firing multiple rounds by a single trigger pull in violation of 18 U.S.C. § 922(o).

## Conclusion

28.    Based on the foregoing, I submit there is probable cause to believe that on or about April 17, 2025, in Fairfax, Virginia, within the Eastern District of Virginia, Jamarion Dawon JACKSON committed a violation of 18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year).

Respectfully submitted,

CHARLES VANCAMPEN (Affiliate)
Digitally signed by CHARLES VANCAMPEN (Affiliate)
Date: 2026.01.06 13:33:28 -05'00'

Charles Vancampen
Task Force Officer
Bureau of Alcohol, Tobacco,
Firearms and Explosives ("ATF")

Subscribed and sworn to in accordance with
Fed. R. Crim. P. 4.1 by telephone on
January 6, 2026.

Digitally signed by Ivan Davis
Date: 2026.01.06 14:27:17 -05'00'

The Honorable Ivan D. Davis
United States Magistrate Judge

11