IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 1:26-cr-22-LMB |
| v. | ) | |
| | ) | Sentencing: June 23, 2026 |
| JAMARION DAWON JACKSON, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>GOVERNMENT'S POSITION ON SENTENCING</u>

After shooting a victim at the Potomac Mills Mall, Jamarion Jackson received a time-served sentence in state court in 2022. That leniency, unfortunately, did not spur Jackson to reform. Instead, with a machinegun in his vehicle, Jackson sped past a Virginia state trooper at approximately 100 miles per hour, ignored the Trooper's lights and sirens, and crashed into several other vehicles. Jackson then fled on foot and unsuccessfully attempted to enter and gain control of three vehicles. As a result, Jackson pleaded guilty to possessing a machinegun in violation of 18 U.S.C. § 922(o). His properly-calculated Guidelines range is 51 to 63 months' imprisonment. The government respectfully submits that a 63-month sentence is necessary to account for the seriousness of the offense, Jackson's violent criminal history, and the need to deter him from further crimes and protect the public.

## BACKGROUND

On April 17, 2025, driving on the right shoulder of southbound Interstate 95, Jackson sped past a Virginia State Trooper at more than 100 miles per hour. ECF No. 28 ¶ 15 ("PSR"). Jackson failed to respond to the Trooper's emergency equipment and crashed into three vehicles. *Id.* ¶ 16. After crashing, Jackson continued to ignore commands to stop and fled down Interstate 95 on foot. *Id.* ¶ 17. He unsuccessfully tried to enter two vehicles and then attempted "to gain entry and

control" of a third vehicle by jumping through its open passenger window. *Id.* ¶¶ 17, 25. The driver of that vehicle accelerated, and Jackson sustained significant injuries. *Id.* ¶ 17. When asked about his occupation during medical treatment, Jackson told a nurse that he sells drugs. *Id.* ¶ 18.

A Trooper found a Glock, Model 19 semi-automatic pistol on the driver's side floorboard of Jackson's vehicle. PSR ¶ 19. The pistol was affixed with a machinegun conversion device and a 31-round magazine. *Id.* The Trooper also found Jackson's iPhone, his wallet (containing $518 in cash), two empty prescription bottles of "promethazine" (neither of which bore Jackson's name), and plastic baggies consistent with the sale of marijuana. *Id.* Law enforcement also found a bag of marijuana on Jackson's person. *Id.*

Photographs recovered from Jackson's iPhone depict him holding the pistol. PSR ¶ 20. Text exchanges show him arranging the purchase of the gun and discussing the purchase of a machinegun conversion device in February and March 2025. *Id.*

On January 9, 2026, a magistrate judge ordered Jackson detained after his arrest on a criminal complaint the previous day. PSR ¶¶ 1-2. On February 4, 2026, a grand jury charged Jackson with possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1), and possessing a machinegun, in violation of 18 U.S.C. § 922(o). ECF No. 14. Pursuant to a plea agreement, Jackson pleaded guilty to the § 922(o) count on April 7, 2026. *See* ECF Nos. 23 (minute entry), 24 (plea agreement), 25 (statement of facts).

The Probation officer circulated a draft PSR on May 19, 2026, *see* ECF No. 27, and a final PSR on June 15, 2026. The PSR notes that, after juvenile adjudications for possessing a weapon at school and battery on a teacher, Jackson was found in violation of his probation on three separate occasions. PSR ¶ 41. In 2022, Jackson shot a victim in the leg at the Potomac Mills Mall and then fled the scene. *See id.* ¶¶ 22, 42. Jackson pleaded guilty to unlawful discharge of a firearm within

an occupied building, felony destruction of property, and carrying a concealed weapon—but received only a sentence of time served and probation. *See id.* The PSR assigned Jackson two criminal history points for those convictions, resulting in a criminal history category of II. *Id.* ¶¶ 42, 46.

Based on Jackson's possession of a machinegun and prior felony convictions, the PSR assigned a base offense level of 20, U.S.S.G. § 2K2.1(a)(4)(B), a two-level enhancement for creating a risk of injury during flight from law enforcement, *id.* § 3C1.2, and a three-level reduction for acceptance of responsibility, *id.* § 3E1.1, producing an offense level of 19. PSR ¶¶ 31-40.

The government objected to the lack of a four-level enhancement under U.S.S.G. § 2K2.1(b)(7)(B) for Jackson's possession of a firearm in connection with Virginia felony eluding, Va. Code Ann. § 46.2-817(B). *See* PSR at 21. The government also requested the PSR note, as grounds for an upward variance, the failure of the Guidelines range to account for the violence of Jackson's prior convictions. *See id.*

## LEGAL STANDARD

At sentencing, a district court must "first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Section 3553(a) requires a court to consider: (1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing, namely, (a) "just punishment" (retribution), (b) deterrence, (c) incapacitation, (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution. *Rita v. United States*, 551 U.S. 338, 347-

48 (2007) (citing 18 U.S.C. § 3553(a)).  A district court must impose a sentence "sufficient, but not greater than necessary" to satisfy those factors.  18 U.S.C. § 3553(a).

Additionally, a district court must orally pronounce all discretionary conditions of supervised release—including "standard" conditions.  *United States v. Tostado*, 171 F.4th 664, 666 (4th Cir. 2026).  When raised by the defendant, the failure to do so requires vacatur for a full resentencing, notwithstanding any appeal waiver in the defendant's plea agreement.  *See id.* at 666 & n.1.

## ARGUMENT

**I.    The Court should apply a four-level enhancement under § 2K2.1(b)(7)(B) because Jackson possessed a firearm in connection with Virginia felony eluding.**

The United States agrees with the Probation Office's calculation of the Guidelines in the PSR, save for its failure to apply the § 2K2.1(b)(7)(B) enhancement.  The Sentencing Guidelines impose a four-level enhancement when a defendant "used or possessed any firearm or ammunition in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(7)(B).  A defendant possesses a firearm "'in connection with' another felony offense when the firearm 'facilitated, or had the potential of facilitating, another felony offense.'"  *United States v. Dix*, 64 F.4th 230, 237 (4th Cir. 2023).  That requirement is satisfied when the felony "'*is rendered more dangerous* by the presence of [the] firearm'" or the firearm "'*protect*[s]'" or "'*embolden*[s]'" the defendant.  *Id.  Dix* is emblematic of the "'not especially burdensome'" "standard for applying" the enhancement.  *Id.* at 238.  There, the defendant "sped away" from a deputy sheriff, "failed to stop" when the deputy "activated the blue light and siren on his patrol car," "crash[ed] into another vehicle," and then further "resisted" arrest.  *Id.* at 233.  A search uncovered a "9-millimeter pistol on the front floorboard of the driver's side of the [defendant's] vehicle," *i.e.*, "lying at Dix's feet within easy reach."  *Id.* at 233, 238.  At sentencing, the district court found that Dix possessed the firearm in

connection with South Carolina's "blue-light offense," requiring drivers to stop when signaled by a law enforcement vehicle. *See id.* at 234 (citing S.C. Code Ann. § 56-5-750). The Fourth Circuit affirmed, holding that because "the firearm was within arm's reach while [Dix] was fleeing from law enforcement," the firearm "could embolden Dix" and "certainly rendered more dangerous" the "blue-light offense." *Id.* at 238.

*Dix*'s reasoning requires application of the enhancement here. Like Dix, Jackson sped away from an officer, failed to stop when signaled, crashed, and then resisted arrest—in Jackson's case, by attempting to enter the vehicles of innocent bystanders while fleeing from law enforcement. PSR ¶¶ 15-17. Like Dix, Jackson had a firearm within easy reach on the "'driver's side floorboard.'" *Id.* ¶ 19. And, like South Carolina, Virginia makes it a felony to drive "in a willful and wanton disregard of" "a visible or audible signal from any law-enforcement officer to bring his motor vehicle to a stop" "so as to interfere with or endanger the operation of the law-enforcement vehicle or endanger a person." Va. Code Ann. § 46.2-817(B). Because Jackson's possession of a firearm "within arm's reach while he was fleeing from law enforcement" "could embolden" him and "certainly rendered more dangerous" the felony-eluding offense, the § 2K2.1(b)(7)(B) enhancement applies. *See Dix*, 64 F.4th at 238.

The fact that Jackson left behind his firearm after crashing, when he fled on foot, does not alter that conclusion. *Contra* PSR at 21. Jackson committed Virginia felony eluding the moment he failed to stop at the Trooper's signal while driving at over 100 miles per hour, *i.e.*, "so as to . . . endanger" the Trooper, the public, and himself. *See* Va. Code Ann. § 46.2-817(B); *Granados v. Garland*, 17 F.4th 475, 484 (4th Cir. 2021) ("'conduct that raises the specter of endangerment,' or conduct that endangers only the defendant, is sufficient for conviction" (citations omitted).

Jackson's subsequent abandonment of the firearm thus does not alter the reality that he possessed a firearm in connection with that offense.

Nor is the Probation Officer correct that the firearm did not have "the potential to facilitate" the offense because Jackson did not "display[], brandish[], reference[], or otherwise use[] the firearm during the offense." *See* PSR at 21. The caselaw is clear that "firearm possession can embolden a defendant *even when the defendant does not attempt to use the firearm*." *Dix*, 64 F.4th at 238 (emphasis added). District courts in this circuit therefore have repeatedly applied the enhancement when defendants possess loaded firearms while engaged in vehicular flight from police. *See, e.g.*, *id.*; *United States v. McKillian*, 2025 WL 3771963, at *1 (4th Cir. Dec. 30, 2025) (per curiam) (affirming finding that defendant "possessed the firearm in connection with fleeing to elude arrest using a motor vehicle" because district court could infer "the firearm was within [defendant's] reach while he was driving"); *United States v. McCrea*, 165 F. App'x 270, 271-72 (4th Cir. 2006) (per curiam) (affirming application of enhancement "for possession of the firearm in connection with another felony offense (failure to stop for a blue light)" where "[a] loaded 9 mm pistol in working order was found under the driver's seat of [defendant's] vehicle"). Likewise, courts have repeatedly inferred that loaded firearms "emboldened" defendants to commit similar offenses. *See, e.g. United States v. Brown*, 765 F. App'x 902, 909 (4th Cir. 2019) (per curiam) (concluding that defendant's "possession of the firearm emboldened him to maintain possession of [stolen] car for over a month"); *United States v. Parker*, 201 F. App'x 952, 953 (4th Cir. 2006) (per curiam) (inferring defendant possessed "firearm[] found underneath the front seat, in connection to the stolen car").

Additionally, application of the § 2K2.1(b)(7)(B) enhancement does *not* preclude application of the two-level enhancement under § 3C1.2 for "creat[ing] a substantial risk of death

or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. The commentary states the § 3C1.2 enhancement does not apply only when a related enhancement "results in an equivalent or greater increase in offense level *solely on the basis of the same conduct*." *Id.* § 3C1.2 cmt. n.1 (emphasis added). Thus, both the § 3C1.2 and another enhancement "may be applied when each is triggered by separate conduct." *United States v. Harrison*, 272 F.3d 220, 223 (4th Cir. 2001).

Here, the § 2K2.1(b)(7)(B) enhancement applies based on Jackson's vehicular flight from the officer *prior* to crashing. *See* PSR ¶¶ 15-16. Whereas the § 3C1.2 enhancement applies based on Jackson's *post-crash* flight on foot and dangerous attempts to "enter two vehicles" and "jump through the open passenger side window of a third vehicle." *Id.* ¶ 17. The enhancements therefore do not target "solely . . . the same conduct," U.S.S.G. § 3C1.2 cmt. n.1, and both apply, *see, e.g.*, *Harrison*, 272 F.3d at 222-24 (holding that enhancement for firing at officer did not preclude § 3C1.2 enhancement for ensuing "high-speed chase"); *United States v. Bourque*, 2023 WL 2158367, at *2 (4th Cir. Feb. 22, 2023) (per curiam) (enhancement for biting officer did not preclude § 3C1.2 enhancement for fleeing with a firearm and discarding it in a public area); *United States v. Johnson*, 457 F. App'x 330, 332-33 (4th Cir. 2011) (per curiam) (enhancement for pointing weapon at officer did not preclude § 3C1.2 enhancement for disobeying commands to drop weapon); *McCrea*, 165 F. App'x at 271-72 (enhancement for possessing firearm while failing to stop for "blue light" did not preclude § 3C1.2 enhancement for high-speed chase); *United States v. Spann*, 199 F.3d 1329, 1999 WL 958470, at *1 (4th Cir. 1999) (per curiam) (similar).

More still, even if both enhancements turned on the exact same conduct—which they do not—the commentary to § 3C1.2 does not govern because it contradicts the Guideline's unambiguous text. The Fourth Circuit has made clear that courts "defer to the commentary" only

if a Guideline is "genuinely ambiguous." *See, e.g.*, *United States v. Mitchell*, 120 F.4th 1233, 1241 (4th Cir. 2024). "'If uncertainty does not exist, there is no plausible reason for deference.'" *Id.* "'The [Guideline] then just means what it means—and the court must give it effect, as the court would any law.'" *Id.* Section 3C1.2 states: "If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels." U.S.S.G. § 3C1.2. Nothing in that unambiguous text even hints that the enhancement does not apply if other enhancements target the same conduct. The text of § 3C1.2 therefore "'means what it means'" and the enhancement applies regardless of whether another enhancement covers the same ground. *See Mitchell*, 120 F.4th at 1241.

In sum, the four-level enhancement under § 2K2.1(b)(7)(B) applies because Jackson possessed a firearm in connection with his vehicular flight from a police officer, Va. Code Ann. § 46.2-817(B). The two-level enhancement under § 3C1.2 also applies because (a) Jackson's post-crash attempts to enter other vehicles independently trigger it and (b) the commentary's restriction on applying § 3C1.2 based on the same conduct as another enhancement is a nullity.

With the § 2K2.1(b)(7)(B) enhancement, Jackson's offense level of 23 and criminal history category of II results in a Guidelines range of 51 to 63 months imprisonment. Without the enhancement, Jackson's Guidelines range is 33 to 41 months. *See* PSR at 18.

## II.    The § 3553(a) factors require a sentence of 63 months' imprisonment.

The seriousness of the offense, Jackson's violent criminal history, and the need for deterrence and protection of the public warrant a 63-month sentence at the top of the Guidelines range, followed by three years of supervised release.

### A.    Offense seriousness, promoting respect for the law, and just punishment.

The extraordinarily dangerous nature of Jackson's conduct warrants a sentence at the top of the Guidelines range to reflect the seriousness of the offense, promote respect for the law, and

8

provide just punishment.  *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A).  Emboldened by his possession of a machinegun and large capacity magazine, Jackson sped along the right shoulder of a crowded highway at more than 100 miles per hour.  *See* PSR ¶¶ 14-15, 19.  After catching the attention of law enforcement, Jackson refused to stop, crashed into a vehicle on the shoulder, and then struck two additional vehicles on the road.  *Id.* ¶ 16.  Further magnifying the danger, Jackson then fled on foot along the highway and attempted to enter and gain control of three vehicles.  *Id.* ¶¶ 17, 25.

So "immense" is the "danger posed by machineguns" that the Supreme Court has characterized "choosing the weapon" as an act of "moral depravity."  *United States v. O'Brien*, 560 U.S. 218, 230 (2010).  The Fourth Circuit has similarly recognized that "ignoring a signal from law enforcement and fleeing from the police" is an "indisputabl[y]" "reprehensible" act.  *Granados*, 17 F.4th at 484-85.  And the risks posed by attempting to "gain entry and control" of a vehicle on the highway by jumping through the window while fleeing law enforcement should go without saying.  *See* PSR ¶¶ 17, 25.  Here, Jackson did all three and attempted to do the third three times.  That conduct demands a stringent sentence at the top of the Guidelines range.

### B.    Jackson's history and characteristics.

Jackson's violent criminal history further supports a 63-month sentence.  And nothing about his history or characteristics provides grounds for mitigation.  *See* 18 U.S.C. § 3553(a)(1).

Jackson's prior violence, indeed, supports an upward variance.  The Sentencing Guidelines provide for a two-level increase when a defendant possesses a machinegun after a prior conviction for a "crime of violence or a controlled substance offense."  *Compare* U.S.S.G. § 2K2.1(a)(3), *with id.* § 2K2.1(a)(4)(B).  While bound by the "categorical approach" in calculating the Guidelines range, a district court must consider "the *actual*" conduct underlying a defendant's prior convictions "when applying the § 3553(a) sentencing factors."  *United States v. Davis*, 130 F.4th 114, 128 (4th Cir. 2025).  Jackson, to repeat, shot a victim at the Potomac Mills Mall and then fled

9

the scene. PSR ¶¶ 22, 42. That conduct is unquestionably violent, even if it resulted in convictions that do not constitute crimes of violence under the categorical approach. Consequently, the failure of the Guidelines range to account for the violence of Jackson's prior convictions supports a two-level upward variance to a Guidelines range of 63 to 78 months—providing additional support for a 63-month sentence. *See Davis*, 130 F.4th at 128. Jackson's "continued disregard for the law," moreover, undercuts any contention his "age at the time of" that offense, 18, constitutes a "mitigat[ing]" factor. *See United States v. Randolph*, 2022 WL 17170850, at *7 (E.D. Va. Nov. 22, 2022).

Jackson also cannot blame his conduct on mental health issues, which he denies. PSR ¶ 66. Nor can he chock his crimes up to an unusually difficult childhood. *See id.* ¶¶ 52-59. To the contrary, Jackson "felt loved and supported by his mother and maternal grandparents throughout his childhood" and his "needs were consistently met." *See id.* ¶¶ 56, 58-59. While certainly not without its difficulties, *see, e.g.*, *id.* ¶ 55 (describing brief stints at homeless shelters), nothing about Jackson's childhood comes close to mitigating his conduct.

### C.    Deterrence and protection of the public.

Jackson's record of state probation violations, lack of an employment history, and apparent unwillingness to participate in rehabilitative programming confirm that a 63-month sentence is necessary for specific deterrence and to protect the public.

Start with Jackson's history of probation violations. After juvenile adjudications for battery on a teacher and possessing a weapon at school, he was thrice found in violation of his state probation. *See* PSR ¶ 41. Among other violations, Jackson tested positive for marijuana and absconded from his residence. *See id.* Jackson, moreover, committed the instant offense while on state probation, failed to report as directed by his probation officer after that offense conduct, and admitted to using marijuana as recently as a few days prior to his federal arrest (presumably, in

10

violation of his state probation). *See id.* ¶¶ 42, 45, 67. His repeated refusal to abide by the conditions of probation underscores the need for a sentence to promote respect for the law, deter him from future misconduct, and protect the public. *See* 18 U.S.C. § 3553(a)(2)(A)-(C).

Turn to Jackson's lack of gainful employment. At the age of 23, Jackson has virtually never managed to keep a job for longer than a month or two. Since obtaining his GED in 2020, Jackson worked for "one month in 2024 as a night stocker at Giant Food," from "December 2022 through January 2023" for UPS, and occasionally "assist[ed] with his mother's businesses." *See* PSR ¶¶ 71-75. Rather than work, Jackson claims he is "primarily supported by his mother and child's mother." *Id.* ¶ 78. By contrast, he told a nurse treating the injuries caused by his attempt to jump into a motorist's vehicle that he "sells drugs." *Id.* ¶ 18. Either way, whether Jackson is a mooch or a drug dealer (or, more likely, both), his evident refusal to work an honest job suggests he requires significant deterrence to avoid returning to crime after his release.

Compounding the concern posed by Jackson's lack of an employment record, he appears unwilling to participate in needed rehabilitative programming. For instance, despite using marijuana since he was 13, testing positive for cocaine while on state probation, and admitting to "experiment[ing] with promethazine syrup," Jackson believes he would not "benefit from treatment services." PSR ¶¶ 67-68. Jackson's apparent unwillingness to take advantage of treatment and other rehabilitative resources, *see* 18 U.S.C. § 3553(a)(2)(D), further underscores the threat he poses to the public and the need for specific deterrence.

**D.    Remaining § 3553(a) factors.**

The other § 3553(a) factors support a 63-month sentence too. As for the kinds of sentences available, Jackson is ineligible for probation, U.S.S.G. § 5C1.1(f), and a 63-month sentence is well below the statutory maximum, 18 U.S.C. § 924(a)(2). *See id.* § 3553(a)(3). A sentence of 63 months is within the Guidelines range. *See id.* § 3553(a)(4), (a)(6); *Gall v. United States*, 552 U.S.

11

38, 54 (2007) (A court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" when it "correctly calculated and carefully reviewed the Guidelines range."). The government is not aware of any pertinent policy statements. *See* 18 U.S.C. § 3553(a)(5). Finally, the government does not seek restitution, so the absence of a need for Jackson to earn money to pay restitution favors a substantial prison sentence. *See id.* § 3553(a)(7).

## CONCLUSION

The government respectfully recommends that the Court impose a sentence of 63 months' imprisonment, followed by three years of supervised release.

Respectfully submitted,

Todd W. Blanche
Acting Attorney General

By: _____ /s/ _____
Nicholas J. Patterson
Reed Sawyers
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: (703) 299-3700
Fax: (703) 299-3982
Email: Nicholas.Patterson@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that, on June 16, 2026, I filed the foregoing with the Clerk of Court using the

CM/ECF system, which will provide notice to all counsel of record.

_____
Nicholas J. Patterson
Reed Sawyers
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (571) 214-8221
Fax: (703) 299-3924
Email: nicholas.patterson@usdoj.gov