## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:26-cr-022 (LMB) |
| | ) | |
| JAMARION DAWON JACKSON, | ) | Sentencing:  June 23, 2026 |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Pursuant to Title 18 U.S.C. § 3553(a), the defendant, Jamarion Dawon Jackson, through counsel, notifies the Court that he has received and reviewed the Pre-Sentence Investigation Report ("PSR") and has no corrections or objections to the Probation Officer's calculation of his offense level (19) or criminal history category (II).  Accordingly, Mr. Jackson agrees that the advisory sentencing range is 33-41 months.  Further, Mr. Jackson submits that a slightly-below-Guideline sentence of no more than 27 months, to be followed by a term of supervised release—and, most likely, by a violation sentence for his conduct in this case arising from his supervision on his previous conviction—is sufficient but not greater than necessary to accomplish the purposes of sentencing in this case.

As noted in both the PSR and the attached letters of support, Mr. Jackson is a young man—barely 22 at the time of the offense, and 23 now—who has made a series of poor decisions as a young adult, but who has clearly accepted responsibility for his conduct, has shown genuine remorse, and has committed himself to using this experience to better himself.  He has been deterred, in part, by the substantial

physical injuries he suffered as a result of his offense, which included a fractured neck and collapsed lung.  He was confined to a wheelchair for a time after those injuries and continues to suffer to this day from shoulder and back pain as a result of those injuries.  And, as the father of a one-year-old daughter, whose first birthday he missed due to his incarceration, Mr. Jackson has gained newfound appreciation of the consequences of his poor decisions.  As Mr. Jackson explains in his letter to the Court,

> I regret the time I've lose with my daughter.  Missing her first birthday was an eye opener and something I could never get back. . . . My goal is to return to society as a productive, responsible and law abiding citizen. . . .  I am committed to making positive choices, supporting my family, gaining & maintaining employment and continuing the personal growth I've started while incarcerated.

Exh. A at 1.  In these circumstances, Mr. Jackson submits that a sentence of no more than 27 months, which is slightly below the advisory Guideline range, is sufficient to accomplish the purposes of sentencing.

## I.    Legal Standard

At sentencing, this Court must "impose a sentence sufficient, *but not greater than necessary*, to comply with the purposes" of sentencing.  18 U.S.C. § 3553(a) (emphasis added).  Although this Court must calculate and consider the applicable Sentencing Guidelines range, it *may not* presume that a within-Guidelines sentence is reasonable.  *See, e.g.*, *Nelson v. United States*, 555 U.S. 350, 352 (2009) (reversing and remanding due to District Court's erroneous presumption that a within-Guidelines range sentence was reasonable).  Rather, this Court must independently

assess the factors enumerated in 18 U.S.C. § 3553(a) to fashion an appropriate sentence "for the individual defendant." *Id*. at 351.[1]

## II.  The Probation Officer Correctly Rejected the Government's Argument for an Enhancement for Using a Firearm in Connection with an Offense During Which it Was Abandoned.

The Probation Officer correctly rejected the government's request for an enhancement under USSG § 2K2.1(b)(7)(B) for using the firearm that is the subject of this offense in connection with another felony offense.   In support of that enhancement, the government relies almost exclusively on *United States v. Dix*, 64 F.th 230 (4th Cir. 2023).  *Dix* does not support application of the enhancement here. As an initial matter, *Dix* merely held that the District Court in the case before it "did not clearly err" in applying the enhancement (in other words, the Fourth Circuit did not fine that the enhancement correctly applied on the facts of *Dix*, but merely that it was not reversible error for the district court to have applied it).  *Dix*, 64 F.4th at 238 (emphasis added).  And here, unlike in *Dix*, Mr. Jackson abandoned the firearm during flight, prior to any interaction with the pursuing law enforcement officer.  In *Dix*, on the other hand, the defendant physically resisted the officer after refusing the

---

[1]  Those factors include: (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the following: the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment.  *See* 18 U.S.C. § 3553(a).

officer's command to exit his vehicle, and while the firearm was within reaching distance. *Id.* at 233. On *those* facts, the Fourth Circuit held that it was at least within the district court's discretion to have found that the firearm protected or emboldened the defendant during his flight, thus allowing the application of the enhancement, at least on a clear error standard of review.

Here, by contrast, the facts suggest that Mr. Jackson's flight was for the purpose of disassociating himself with the firearm. He fled on foot from his vehicle prior to his arrest, abandoning the firearm in the vehicle, and was arrested after being injured while attempting to enter *another* vehicle—without possessing or using the firearm. Under the Guidelines as calculated, he is already receiving the reckless-endangerment-during-flight enhancement to reflect the risk caused by *that* conduct. Moreover, the danger caused by his possession of the firearm—and by the type of firearm at issue—are fully reflected in the base offense level. The government's attempt to further enhance the sentence based on the use of the firearm to facilitate the eluding conduct, however, is devoid of any factual basis because Mr. Jackson did not use the firearm to facilitate his eluding conduct. In fact, he abandoned it during that offense prior to any interaction with law enforcement.

## III. The 18 U.S.C. § 3553(a) Factors Support a Sentence of No More than 27 Months.

As set forth in the PSR, Mr. Jackson is a lifelong resident of the Northern Virginia area. He was raised principally by his mother and maternal grandparents, but his childhood was unfortunately marked by instability. He had limited contact

with his father through most of his life, other than living with him for approximately 18 months while his mother was incarcerated when Mr. Jackson was about twelve years old. His mother had married Mr. Jackson's step-father when he was a toddler, and they remained married for about ten years until his mother's previously-mentioned incarceration. His living situation during those years, however. remained unstable. Mr. Jackson reports that there was abuse in the household, that his mother abused alcohol, and that he and his mother stayed at shelters for months at a time, or with her parents, on a number of occasions when they did not have a stable residence.

Mr. Jackson's mother was able to put her substance abuse behind her following her incarceration. Indeed, she reports that she has been sober for ten years and has remained steadily employed most of that time. Mr. Jackson, however, was a young teenager when his mother was released from her sentence. By that time he was regularly using marijuana and beginning to have problems in school. Unsurprisingly, this led to his involvement with the juvenile justice system beginning at 14 years old. Nonetheless, he was able to obtain his GED through an alternative school. Then, as a young adult, he was in a long-term relationship with the mother of his daughter for approximately two years, which ended shortly before his arrest in this case.

As already noted, Mr. Jackson turned 22 just days before the offense in this case. And, as courts have noted time and again, this is an age at which the science of brain development establishes that the frontal lobe—the portion of the brain responsible for "planning, organizing information, and thinking about possible

consequences of action"—is not yet fully developed. *See United States v. Nance*, 957 F.3d 204, 217 (4th Cir. 2020) (Gregory, J., concurring) (citing  Sarah B. Johnson, Robert W. Blum & Jay N. Giedd, *Adolescent Maturity and the Brain: The Promise and Pitfalls of Neuroscience Research in Adolescent Health Policy*, Journal of Adolescent Health, 45 J. Adolescent Health 216 (2009), and Elizabeth S. Scott & Thomas Grisso, *Developmental Incompetence, Due Process, and Juvenile Justice Policy*, 83 N.C. L. Rev. 793, 812 (2005)).  "Indeed, the frontal lobe is one of the last areas of the brain to develop, well into the twenties." *Id.*

Mr. Jackson's letter to the Court (attached as Exhibit A), as well as the letters of his mother, the mother of his daughter, and two other close friends (all attached as Exhibit B), demonstrate that Mr. Jackson—now 23 years old and more than a year removed from the offense—has matured and learned from his offense and the consequences he has already faced.  Moreover, the numerous certificates attached as Exhibit C document the efforts Mr. Jackson has made during his incarceration to prepare to reenter society with the skills he will need to make good on his decision to put his criminal behavior behind him.  As his mother explains,

> I have seen his remorse firsthand. I have watched him struggle with the realization that his actions have hurt not only himself but also those who love him most. I have seen tears, regret, and a genuine desire to become a better man. The weight of what has happened is something he carries every day.

Exh. B. at 1.

Similarly, Ms. Eubanks, the mother of his daughter, attests to Mr. Jackson's growth since the time of the offense:

> I believe Jamarion has taken this time to reflect on his actions and learn from his mistakes. From my conversations with him, I have seen a genuine desire to make better decisions and create a more positive future for himself and his family. I believe he wants to leave the streets behind and focus on being the father, provider, and productive member of society that his daughter deserves. He understands that his choices have consequences, and I believe he is committed to becoming a better man for himself, for [his daughter] and for the people who care about him.

Exh. B. at 4.

Importantly, Mr. Jackson's strong community support demonstrates not only the genuineness of his remorse and his potential for rehabilitation, but also the strong community support he will have upon his release from incarceration. This community support, combined with the strictures of supervised release, will support Mr. Jackson's successful reintegration into the community once he emerges from incarceration.

## CONCLUSION

For all the foregoing reasons, Mr. Jackson respectfully submits that a sentence of no more than 27 months, followed by a term of supervised release—which is only slightly below the advisory Guideline range, and which will most likely be followed by a violation sentence arising from this same conduct—is sufficient to achieve the purposes of sentencing in this case. Further, Mr. Jackson agrees with the Probation Office that he lacks the ability to pay a fine. *See* PSR ¶ 79. Finally, Mr. Jackson

requests that the Court recommend that he be designated for service of his sentence to a facility as close as possible to the Northern Virginia area to be near his family, and specifically requests that the Court recommend that he serve his sentence at FCI Cumberland or, alternatively, FCI Petersburg.

Respectfully submitted,

JAMARION DAWON JACKSON

By Counsel,
Geremy C. Kamens,
Federal Public Defender

By:        _____/s/_____
Todd M. Richman
Va. Bar # 41834
Assistant Federal Public Defender
Counsel for Mr. Jackson
1650 King Street, Suite 500
Alexandria, Virginia   22314
(703) 600-0845 (telephone)
(703) 600-0880 (facsimile)
Todd_Richman@fd.org (email)